IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **HUMANA INC.**, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:23-cv-909-O |
| ) | |
| **XAVIER BECERRA**, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## ANSWER TO PLAINTIFFS' COMPLAINT

Defendants, the United States Department of Health and Human Services and Xavier Becerra, in his official capacity as Secretary of Health and Human Services (collectively, and inclusively of the Centers for Medicare & Medicaid Services, "HHS"), hereby answer the Complaint, ECF No. 1, filed by Humana Inc. and Humana Benefit Plan of Texas, Inc. (collectively, "Humana."). HHS responds to each numbered paragraph as follows:

1. The first sentence of this paragraph contains Humana's characterization of this lawsuit, to which no response is required. As to the second sentence, HHS admits that more than 30 million beneficiaries are enrolled in the Medicare Advantage ("MA") program. The second sentence also appears to allege that the challenged rule jeopardizes the financial stability of the MA program. HHS denies this allegation.

2. As to the first sentence of this paragraph, HHS admits that on February 1, 2023, it published a final rule in the Federal Register regarding the calculation of overpayment recoveries in MA audits. HHS denies the second and third sentences.

3. HHS lacks knowledge or information sufficient to confirm or deny the allegations contained in the first sentence of this paragraph. As to the second sentence, HHS admits that

approximately half of all Medicare beneficiaries are enrolled in MA plans. As to the third sentence, HHS lacks knowledge or information sufficient to confirm or deny the general allegation that "Medicare Advantage enrollees report high levels of satisfaction with their coverage." HHS admits that some MA plans offer benefits not available through traditional Medicare. HHS admits that, for historical reasons, traditional Medicare is sometimes referred to as "fee-for-service Medicare," although that is now a misnomer as to most of the program. As to the fourth sentence, HHS admits that MA Organizations ("MAOs") receive flat monthly payments to provide Medicare benefits to covered individuals. The remainder of the paragraph contains Humana's characterizations of the Medicare statute and legal conclusions, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to the Medicare statute for a full and accurate statement of its contents.

4. HHS admits that it published a proposed rule in 2018, and a final rule in 2023, which Humana challenges here. HHS further admits that, in 2012, it published a methodology for calculating extrapolated recoveries in Risk Adjustment Data Validation ("RADV") audits of MA plans, which said that "to determine the final payment recovery amount, CMS will apply a Fee-for-Service Adjuster (FFS Adjuster) amount as an offset to the preliminary recovery amount." HHS admits that, in the final rule challenged here, CMS determined that an FFS Adjuster would not be applied to extrapolated recoveries in RADV audits of MA plans. The remainder of the paragraph consists of Humana's characterizations of that rulemaking and related agency actions, to which no response is required. To the extent a response is deemed required, HHS denies those characterizations, and refers the Court to the documents in question for a full and accurate statement of their contents. HHS specifically denies that the challenged rule "violate[s] . . . basic

actuarial principles," or "violates published standards of actuarial practice," or introduces a "double standard" into the Medicare Advantage program.

5.  HHS admits that CMS published a final rule in the Federal Register regarding the calculation of overpayment recoveries in MA audits on February 1, 2023.  HHS denies the second and third sentences.  The remainder of the paragraph consists of Humana's characterizations of that rulemaking and the Medicare statute, to which no response is required.  To the extent a response is deemed required, HHS denies those characterizations, and refers the Court to the statute and the challenged rule for a full and accurate statement of their contents.

6.  The final sentence of this paragraph consists of Humana's request for relief, to which no response is required.  To the extent a response is deemed required, HHS denies that Humana is entitled to the requested relief, or any relief as all.  The remainder of the paragraph consists of Humana's legal conclusions, which are denied.

7.  HHS lacks knowledge or information sufficient to confirm or deny the allegations contained in the first two sentences of this paragraph.  The final sentence is admitted.

8.  HHS lacks knowledge or information sufficient to confirm or deny the allegations contained in the first two sentences of this paragraph.  The final two sentences are admitted.

9.  HHS lacks knowledge or information sufficient to confirm or deny the allegations contained in the first sentence of this paragraph.  The second sentence is admitted.  The third sentence is denied.

10. The first and third sentences of this paragraph are admitted.  The second sentence contains Humana's characterization of this lawsuit, to which no response is required.

11. This paragraph consists of Humana's legal conclusions, to which no response is required.

12. This paragraph consists of Humana's legal conclusions, to which no response is required.

13. Admitted that Medicare Parts A and B are commonly referred to in various ways, including as "traditional Medicare" and "fee-for-service Medicare," although the latter is now a misnomer. Otherwise admitted.

14. Admitted.

15. Admitted.

16. This paragraph primarily consists of Humana's characterizations of the payment model in Medicare Parts A and B. The first sentence consists of Humana's characterization of this payment model as "fundamentally different" from the MA payment model. HHS admits that the payment models are different, and otherwise denies Humana's characterization. HHS admits the second sentence. HHS denies the third sentence. HHS admits the fourth sentence. HHS denies the fifth and sixth sentences.

17. HHS admits that the MA program uses a different payment structure than Medicare Parts A and B. The remainder of the first sentence consists of Humana's characterization of Congressional intent, which HHS lacks knowledge or information sufficient to confirm or deny. As to the second sentence, HHS repeats its denial that Medicare Parts A and B "pay doctors and hospitals for each service performed." The second sentence is otherwise admitted. HHS admits the third sentence. HHS denies the fourth sentence. HHS admits the fifth and sixth sentences.

18. The first sentence substantially consists of a quotation from a report of the House of Representatives. HHS admits that the report contains the quoted language on the page indicated, and respectfully refers the Court to the cited report for a full and accurate statement of its contents.

The second sentence consists of Humana's characterization of Congressional intent, which HHS lacks knowledge or information sufficient to confirm or deny.

19.  HHS lacks knowledge or information sufficient to confirm or deny the first sentence.  As to the second sentence, HHS admits that some MA plans offer dental care, hearing aids, and over-the-counter drugs.  As to the third and fourth sentences, HHS admits that the average monthly premium for MA plans decreased between 2015 and 2022, as described.

20.  The first four sentences of this paragraph, and its sixth sentence, consist of allegations made on the basis of privately published reports.  HHS lacks knowledge or information sufficient to confirm or deny the truth of these allegations.  HHS admits the fifth sentence.

21.  Denied.  The Medicare statute expressly contemplates that MAOs may lawfully be paid on the basis of the costs that an average MAO would be expected to bear for covering a given beneficiary.  *See* 42 U.S.C. § 1395w-23(a)(1)(C)(ii)(IV) (allowing for "risk adjustment using Medicare Advantage diagnostic, cost, and use data").

22.  The first sentence of this paragraph consists of Humana's characterizations of the Medicare statute, to which no response is required.  To the extent a response is deemed required, HHS denies those characterizations, and refers the Court to the statute for a full and accurate statement of its contents.  HHS denies that the second sentence is an accurate definition of "risk adjustment."  The third sentence of this paragraph substantially consists of a quotation from a CMS report.  HHS admits that the report contains the quoted language on the page indicated, and respectfully refers the Court to the cited report for a full and accurate statement of its contents.  The fourth sentence is denied.  The Medicare statute expressly authorizes CMS to "substitute" other "adjustment factors" for the listed characteristics.  *See* 42 U.S.C. § 1395w-23(a)(1)(C)(i).  The fifth sentence is denied.  The Medicare statute expressly contemplates that MAOs may

lawfully be paid on the basis of the costs that an average MAO would be expected to bear for covering a given beneficiary. *See* 42 U.S.C. § 1395w-23(a)(1)(C)(ii)(IV) (allowing for "risk adjustment using Medicare Advantage diagnostic, cost, and use data").

23. Admitted.

24. HHS admits the first four sentences of this paragraph. HHS lacks knowledge or information sufficient to confirm or deny the fifth sentence. HHS admits the sixth sentence.

25. Admitted.

26. HHS admits the first sentence of this paragraph. HHS denies the second sentence. HHS admits the third sentence.

27. HHS admits the first three sentences of this paragraph. HHS denies the fourth sentence. The "diagnosis codes" discussed in this sentence are simply a means of communicating a patient's relevant diagnoses, and are not themselves a measure of health risks. HHS lacks knowledge or information sufficient to confirm or deny the fifth and sixth sentences. As to the footnote associated with the sixth sentence, HHS admits that healthcare providers seeking compensation from Medicare Parts A and B submit claims forms which include diagnosis codes.

28. Denied. As to the first sentence, CMS establishes the "Hierarchical Condition Categories" before MAOs report diagnosis data. The second sentence does not accurately reflect the construction of the MA payment model.

29. Denied. This paragraph does not accurately reflect the construction of the MA payment model.

30. Denied.

31. The first two sentences of this paragraph contain Humana's characterization of the process through which MA risk coefficients are developed. HHS admits that it "translates its cost

estimate into coefficients . . . which can be added together to calculate risk scores." HHS further admits that, by definition, a Medicare beneficiary of average risk will have a risk score of 1.0. The first two sentences are otherwise denied. HHS denies the third sentence. HHS lacks knowledge or information sufficient to confirm or deny the fourth and fifth sentences.

32.     HHS admits that, as a general matter, "a Medicare Advantage enrollee's risk score . . . is the sum of all of their risk coefficients." The first sentence is otherwise denied. As to the second sentence, HHS admits that a beneficiary's risk score includes "demographic coefficients." The second sentence is otherwise denied. The third sentence is denied.

33.     This paragraph presents a "simplified example," but does not allege any facts to which a response is required. To the extent a response is deemed required, HHS denies the allegations in this paragraph.

34.     This paragraph presents Humana's conclusions from the "simplified example" in the previous paragraph, but does not allege any facts to which a response is required. To the extent a response is deemed required, HHS denies the allegations in this paragraph.

35.     HHS lacks knowledge or information sufficient to confirm or deny the first sentence. HHS denies the second sentence. The third and fifth sentences consist of Humana's characterizations of a research paper and an advance notice from the MA program, to which no response is required. To the extent that a response is deemed required, HHS respectfully refers the Court to those documents for a full and accurate statement of their contents. As to the fourth sentence, HHS admits that CMS has sometimes said that MAOs have an incentive to report beneficiaries' diagnoses "more completely" than healthcare providers in Medicare Parts A and B.

36. This paragraph consists of Humana's characterization of and quotation from the Medicare statute, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to the statute for a full and accurate statement of its contents.

37. The first two sentences of this paragraph contain Humana's characterization of and quotation from the Medicare statute, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to the statute for a full and accurate statement of its contents. As to the second sentence, HHS also admits that it publishes the MA coding pattern adjustment for a given year in the rate announcement for that year. As to the third sentence, HHS admits that the coding pattern adjustment for each year since 2019 has been 5.9 percent. The fourth sentence presents Humana's conclusions from the "simplified example" presented in paragraph 33, but does not allege any facts to which a response is required. To the extent a response is deemed required, HHS denies the allegations in the fourth sentence and its associated footnote.

38. The first three sentences of this paragraph contain Humana's characterization of and quotation from the Medicare statute and CMS regulations, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to the statute and regulations for a full and accurate statement of their contents. HHS admits that it conducts periodic RADV audits of diagnosis data submitted for payment by MAOs, but otherwise denies the allegations in the fourth and fifth sentences of this paragraph.

39. HHS denies the first sentence. The second sentence presents Humana's conclusions from the "simplified example" presented in paragraph 33, but does not allege any facts to which a response is required. To the extent a response is deemed required, HHS denies the allegations in the second sentence.

40. As to the first two sentences of this paragraph, HHS admits that in 2010 it published an informal proposal to begin calculating extrapolated RADV audits recoveries, and otherwise denies Humana's characterizations of that proposal. HHS denies the third sentence.

41. The first two sentences of this paragraph contain Humana's quotations from a 2011 letter that it sent to CMS. HHS admits that the quoted language appears in the letter in question, and otherwise denies the allegations in the first two sentences. HHS denies the third, fourth, and fifth sentences. The sixth sentence contains Humana's quotations from a letter submitted by the Vice President of the American Academy of Actuaries in 2011. HHS admits that the quoted language appears in the letter in question, and otherwise denies the allegations in the sixth sentence. HHS lacks knowledge or information sufficient to confirm or deny the seventh sentence.

42. HHS lacks knowledge or information sufficient to confirm or deny the first sentence of this paragraph. The remainder of this paragraph presents another "simplified example," but does not allege any facts to which a response is required. To the extent a response is deemed required, HHS denies the allegations in the remainder of this paragraph.

43. HHS denies the first three sentences of this paragraph. The final sentence refers to the "simplified example" presented in paragraph 42, but does not allege any facts to which a response is required. To the extent a response is deemed required, HHS denies the allegations in the final sentence.

44. HHS denies the first two sentences of this paragraph. The remainder of this paragraph extends the "simplified example" presented in paragraph 42, but does not allege any facts to which a response is required. To the extent a response is deemed required, HHS denies the allegations in the remainder of this paragraph.

45. Denied.

46. This paragraph consists of quotations from and characterizations of two comment letters submitted in response to the informal proposal discussed in paragraph 40, to which no response is required. To the extent a response is deemed required, HHS admits that the quoted language appears in the letters in question, and respectfully refers the Court to the administrative record for a full and accurate statement of the content of these letters. *See* Certified Administrative Record ("A.R.") at 7,697–757, 7,830–31. HHS otherwise denies the allegations in this paragraph.

47. HHS lacks knowledge or information sufficient to confirm or deny the allegations in the first three sentences of this paragraph, which purport to characterize and quote from unidentified "CMS documents obtained under the Freedom of Information Act." The last three sentences appear to consist of quotations from and characterizations of a document in the administrative record, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to the document in question for a complete and accurate statement of its contents. *See* A.R. at 7898.

48. HHS lacks knowledge or information sufficient to confirm or deny the allegations in this paragraph, which purport to characterize and quote from unidentified "internal agency documents."

49. HHS lacks knowledge or information sufficient to confirm or deny the allegations in this paragraph, which continue the discussion of unidentified "internal agency documents" first mentioned in paragraph 48.

50. HHS lacks knowledge or information sufficient to confirm or deny the allegations in this paragraph, which continue the discussion of unidentified "internal agency documents" first mentioned in paragraph 48, and purport to quote from unidentified "internal documents."

51.     HHS lacks knowledge or information sufficient to confirm or deny the allegations in this paragraph, which purport to characterize and quote from unidentified agency documents.

52.     This paragraph consists of quotations from and characterizations of a document in the administrative record, to which no response is required.  To the extent a response is deemed required, HHS respectfully refers the Court to the document in question for a complete and accurate statement of its contents.  *See* A.R. at 7,906–10.

53.     HHS lacks knowledge or information sufficient to confirm or deny the allegations in the first sentence of this paragraph.  The second sentence and its associated footnote consist of quotations from and characterizations of a document in the administrative record, to which no response is required.  To the extent a response is deemed required, HHS respectfully refers the Court to the document in question for a complete and accurate statement of its contents.  *See* A.R. at 2,970–3,017.

54.     As to this paragraph, HHS admits that, outside of litigation, it made no public statements about the FFS Adjuster between 2012 and 2018; otherwise denied.

55.      The first sentence of this paragraph consists of Humana's characterization of the notice of proposed rulemaking that led to the rule at issue in this case, to which no response is required.  To the extent a response is deemed required, HHS respectfully refers the Court to the notice of proposed rulemaking for a full and accurate statement of its contents.   HHS denies the second sentence.  The last three sentences of this paragraph consist of Humana's characterization of and quotation from a district court opinion, to which no response is required.   To the extent a response is deemed required, HHS respectfully refers the Court to the cited decision for a full and accurate statement of its contents.

56.     HHS admits that, on November 1, 2018, it published a notice of proposed rulemaking concerning RADV audits in the Federal Register. All but the last sentence of this paragraph consists of Humana's characterizations of that notice of proposed rulemaking and a study which accompanied it, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to the cited administrative record documents for a full and accurate statement of their contents. *See* A.R. at 1–7, 7,065–86. HHS denies the last sentence of this paragraph.

57.     HHS admits that, shortly after publishing the notice of proposed rulemaking and an associated study, it brought that publication to the attention of a district court hearing a related case. This paragraph consists of Humana's characterizations of that district court filing, a district court decision in the same case, and a subsequent decision from the court of appeals, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to the cited decisions and filing for a full and accurate statement of their contents.

58.     This paragraph consists of Humana's characterization of the notice of proposed rulemaking that led to the rule at issue in this case, a study which accompanied it, and subsequent Federal Register publications and study documents, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to these administrative record documents for a full and accurate statement of their contents. *See* A.R. at 1–7, 14–17, 7,065–86, 7,497–507.

59.     This paragraph consists of Humana's characterization of comments submitted in the rulemaking at issue here, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to these administrative record documents for a full and

accurate statement of their contents. *See* A.R. at 2,892–969, 3,018–129. HHS specifically denies the characterization in the first sentence of this paragraph.

60.     HHS denies the first sentence of this paragraph. HHS lacks knowledge or information sufficient to confirm or deny the allegations in the second sentence of this paragraph, which purport to quote from unidentified "internal documents."

61.     The first and third sentences of this paragraph consist of Humana's characterization of a comment that it submitted in this rulemaking, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to this administrative record document for a full and accurate statement of its contents. *See* A.R. at 2,970–3,017. The second sentence combines a characterization of a provision of the Medicare statute with quotations from and characterizations of an MA rate announcement from 2017, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to the Medicare statute and the cited document for a full and accurate statement of their contents.

62.     This paragraph consists of Humana's characterization of a comment that it submitted in this rulemaking, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to this administrative record document for a full and accurate statement of its contents. *See* A.R. at 2,970–3,017.

63.     As to the first sentence of this paragraph, HHS admits that CMS published the final rule at issue in this case in the Federal Register on February 1, 2023, after twice extending its deadline for finalization. The remainder of this paragraph consists of Humana's characterizations of and quotation from that final rule, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to this administrative record document for a full and accurate statement of its contents. *See* A.R. at 6,617–39.

64. This paragraph consists of Humana's characterizations of and quotation from the final rule and a court of appeals decision, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to this administrative record document and the cited decision for a full and accurate statement of their contents.

65. HHS denies the first sentence of this paragraph. The second sentence consists of Humana's characterizations of and quotation from a Federal Register publication, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to the cited document for a full and accurate statement of its contents. HHS denies the third and fourth sentences of this paragraph.

66. This paragraph consists of Humana's characterizations of the final rule, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to this administrative record document for a full and accurate statement of its contents.

67. This paragraph consists of Humana's characterizations of and quotation from the final rule, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to this administrative record document for a full and accurate statement of its contents.

68. The first three sentences of this paragraph consist of Humana's legal conclusions, to which no response is required. To the extent a response is deemed required, they are denied. The fourth sentence consists of Humana's characterization of a comment that it submitted in the rulemaking, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to this administrative record document for a full and accurate statement of its contents. *See* A.R. 2,970–3,017. The final sentence of this paragraph consists of Humana's quotation from and characterization of a 2010 CMS publication, to which no response

is required. To the extent a response is deemed required, HHS respectfully refers the Court to the cited document for a full and accurate statement of its contents.

69. This paragraph consists of Humana's characterizations of and quotation from the final rule, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to this administrative record document for a full and accurate statement of its contents.

70. Denied.

71. This paragraph consists of Humana's characterizations of and quotation from the final rule, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to this administrative record document for a full and accurate statement of its contents.

72. HHS repeats and incorporates its response to paragraphs 1 through 71 above as if set forth fully herein.

73. This paragraph consists of quotations from the Administrative Procedure Act, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to the statute for a full and accurate statement of its contents.

74. This paragraph consists of Humana's legal conclusions, to which no response is required. To the extent that a response is deemed required, denied.

75. This paragraph consists of Humana's legal conclusions, to which no response is required. To the extent that a response is deemed required, denied.

76. This paragraph consists of Humana's legal conclusions, to which no response is required. To the extent that a response is deemed required, denied.

77. This paragraph consists of Humana's legal conclusions, to which no response is required. To the extent that a response is deemed required, denied.

78. HHS repeats and incorporates its response to paragraphs 1 through 77 above as if set forth fully herein.

79. This paragraph consists of quotations from the Administrative Procedure Act, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to the statute for a full and accurate statement of its contents.

80. This paragraph consists of quotations from the Medicare statute, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to the statute for a full and accurate statement of its contents.

81. HHS denies the first sentence. As to the second sentence, HHS admits that it first announced that it would not apply an FFS Adjuster in extrapolated RADV audits in the final rule at issue in this case.

82. HHS lacks knowledge or information sufficient to confirm or deny the allegation in this paragraph.

83. HHS lacks knowledge or information sufficient to confirm or deny the allegations in the first sentence of this paragraph. The second sentence consists of Humana's characterization of and quotation from a comment that it submitted in this rulemaking, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to this administrative record document for a full and accurate statement of its contents. *See* A.R. at 2,970–3,017.

84. This paragraph consists of Humana's legal conclusions, to which no response is required. To the extent that a response is deemed required, denied.

85. This paragraph consists of Humana's legal conclusions, to which no response is required. To the extent that a response is deemed required, denied.

86. This paragraph consists of Humana's legal conclusions, to which no response is required. To the extent that a response is deemed required, denied.

87. This paragraph consists of Humana's legal conclusions, to which no response is required. To the extent that a response is deemed required, denied.

88. HHS repeats and incorporates its response to paragraphs 1 through 87 above as if set forth fully herein.

89. This paragraph consists of quotations from the Administrative Procedure Act, to which no response is required. To the extent a response is deemed required, HHS respectfully refers the Court to the statute for a full and accurate statement of its contents.

90. The first and third sentences of this paragraph consist of Humana's legal conclusions, to which no response is required. To the extent that a response is deemed required, denied. As to the second sentence, HHS admits that it did not seek public comment on the decision in *UnitedHealthcare v. Becerra*, 16 F.4th 867 (D.C. Cir. 2021), in the course of the rulemaking at issue here.

91. This paragraph consists of Humana's legal conclusions, to which no response is required. To the extent that a response is deemed required, denied.

The remaining paragraphs of the Complaint consist of Humana's request for relief, to which no response is required. To the extent a response is deemed required, HHS denies that Humana is entitled to the relief requested, or to any relief whatsoever.

HHS hereby denies each and every allegation in the Complaint not expressly admitted or denied above.

**DEFENSES**

1. The Court lacks subject-matter jurisdiction over this action.

2. HHS' actions are fully consistent with the applicable provisions of the Medicare statute and the Administrative Procedure Act.

Respectfully submitted,

BRIAN D. NETTER
Deputy Assistant Attorney General

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendants*

Date: September 6, 2024